# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

JOHN F. TOMASIC and
KATHERINE A. HOOVER,

    Plaintiffs,

vs.

OCEAN BOUNTY MARINE RAILWAY,
OCEAN BOUNTY SEAFOOD, and
WILLIAM WALLACE, assets and the
property it is built on owned
by the Durant family,

    Defendants.

CV 213-26

## ORDER

Presently before the Court are Defendants' Motions to Dismiss, Dkt. Nos. 32, 34,[1] along with Plaintiffs' Motion for Summary Judgment, Dkt. No. 16, Defendants' Motion to Strike and Motion for Judicial Review, Dkt. No. 38, Plaintiffs' Motions for a Hearing Regarding Summary Judgment, Dkt. Nos. 63, 71, Plaintiffs' Renewed Motion for Summary Judgment, Dkt. No. 75, and Defendants' Motion to Reconsider, Dkt. No. 81. Upon due

---

[1] Apparently, Defendants have filed identical motions and responses, with the difference being that one filing, Dkt. No. 34, includes exhibits of orders involving the parties. Dkt. Nos. 30; 32; 34; 35. The Court will therefore refer to only the most comprehensive filing. Dkt. No. 34.

1

consideration, Defendants' Motion to Dismiss is **GRANTED**, thereby making all other pending motions **MOOT**.

## I. Factual Background

The present action arises from damages to a boat moored to a dock. John Tomasic and Katherine Hoover are pro se plaintiffs. Dkt. No. 1, at 1. Their Complaint tells of colorful events, none of which is admitted by others. The Complaint asserts an in rem action "against the property of Ocean Bounty Marine Railway and Ocean Bounty Seafood,"[2] which are believed to be owned by "the Durant family." Id. The two businesses sit adjacently in Valona, Georgia on "tidal marsh land and [an] estuary." Id. Allegedly, the facilities have been and continue to be "in a serious state of disrepair." See id. Plaintiffs assert that Hunter Forsyth leases the property and represents the interests of the Durant family, and that Forsyth leased the property to Mary Alice Thomas. Id.

Plaintiffs met with Thomas several times and discussed a verbal agreement with Forsyth "to repair the Marine Railway in exchange for hauling" Plaintiffs' boat, named "R/V Sunny" ("the boat"). Id. No dockage fees would be charged. Dkt. No. 6, at 2. On June 21, 2012, Plaintiffs memorialized the agreement in

---

[2] Although the action is brought against these persons' assets, for clarity and conciseness, the Court will use the term "Defendants" as encompassing the persons, not the property.

2

writing, although it is signed by only Plaintiffs.[3] Dkt. No. 1, at 1-2, Ex. A. Plaintiffs claim that three days before the boat arrived to Defendants' property from Florida, Thomas said that the dock would be repaired and that she would make room for the boat. Dkt. No. 6, at 2.

On July 3, 2012, Plaintiffs claim that William Wallace[4] boarded the boat and moved it next to a derelict shrimp boat—all while Plaintiffs were in the boat. Dkt. No. 1, at 2. Once Plaintiffs realized that the boat was moving, they questioned Wallace, who said "he was going to repair the dock." Id. Later that day, Wallace "left after placing only two used pilings and a [jerry-rigged, 30-foot] ramp" to the dock with a "[two]-inch wide tie down strap." Id. The next evening, the ramp collapsed as Tomasic attempted to cross the planks, leaving him hanging by one hand and holding a gas can and a computer in the other. See id.

The next day, Tomasic complained to Wallace, who blamed another boat for the ramp's damage. Id. Without asking for Plaintiffs' permission, Wallace boarded R/V Sunny to untie it from the derelict shrimp boat and retie it in the boat's original position. See id. In days, a wind shift pinned the boat against a misaligned piling installed by Wallace, which

---

[3] The memorialization also asserts that Defendants breached the agreement. Dkt. No. 1, at 1-2, Ex. A.
[4] At a motions hearing, the parties clarified that Wallace operates a docking business.

caused severe damage to the rub rail and undetermined damage to the boat's bottom. Id. When Tomasic asked Wallace who told him to move the boat, Wallace identified Forsyth. Id. Forsyth, Thomas, and Wallace, along with Defendants' attorney, refused to provide insurance information to Plaintiffs. Id.; Dkt. No. 6, at 2. At some point, Plaintiffs claim that Tomasic's life was threatened and that a friend of Thomas, Forrest Sawyer, threatened to burn the boat, although Sawyer has no official connection with Wallace or the Ocean Bounty entities. Dkt. No. 6, at 2.

In early October 2012, without asking permission, Wallace again boarded the boat and tied it to a shrimp boat. Dkt. No. 1, at 2. Wallace did not notify the shrimp boat's owner about moving the shrimp boat from its leased dock at Ocean Bounty. Id. No bumpers were placed between Plaintiffs' boat and the shrimp boat. Id. Then, on October 15, 2012, a rotting dock collapsed from a high tide, causing severe damage to R/V Sunny. Id. The shrimp boat's owner called Tomasic to tell him that he suffered a heart attack trying to climb over the broken dock and board his boat. Id.

On January 28, 2013,[5] Wallace called Hoover at the hospital, who was in a weakened condition from having undergone heart

---

[5] The Complaint says that the phone call occurred on January 28, 2012, but the Court treats this as a scrivener's error given the timing of the allegation relative to Plaintiffs' other assertions. Dkt. No. 1, at 2.

4

surgery less than a week before. Id. Wallace demanded $4,700, as allegedly ordered by "Judge Stewart after [the judge] held a hearing without proper notice to" Plaintiffs. Id. at 3. Wallace also claimed to have had a sheriff issue an arrest warrant for Tomasic. Id.

At some point, Tomasic reported Ocean Bounty Seafood's allegedly unsafe conditions to the Occupational Safety and Health Administration.[6] Dkt. No. 6, at 2. Plaintiffs allege that Defendants' attorney, in response, filed a fraudulent document asserting completion of OSHA's requirements, although Plaintiffs claim that work to ensure OSHA compliance had not finished, or even begun. See id. Tomasic responded to this allegedly fraudulent letter and disputed its accuracy. See id. Plaintiffs claim that Sawyer, in response, wrote and filed fraudulent lease charges on Ocean Bounty Marine Railway and Seafood letterhead for the boat's dock rent and Thomas's apartment, although the "Marine Railway and apartment were never used." See id.

## II. Procedural Background

On February 19, 2013, Plaintiffs filed suit against "Ocean Bounty Marine Railway, Ocean Bounty Seafood, and William

---

[6] Plaintiffs also assert that in early January, Tomasic noticed Wallace illegally filling wetlands, which was allegedly confirmed by the Georgia Department of Natural Resources. Dkt. No. 1, at 3. The State of Georgia allowed 30 days to comply with an order for Wallace to reclaim the site. Id.

Wallace's assets and the property it [sic.] is built on owned by the Durant family." Dkt. No. 1, at 1. On February 25, 2013, Plaintiffs filed an amended complaint. Dkt. No. 6. Plaintiffs seek $105,000 in damages—$78,500 for breach of contract (including the cost of hauling the boat), $21,500 for damages (apparently for the injury caused by Wallace's alleged negligence), and $5,000 in legal costs (although to draft the Complaint, "Plaintiffs have expended many hours [that are priceless] doing research"). Plaintiffs also "request that the Durant family property where Ocean Bounty Seafood and Ocean Bounty Marine Railway are situated be arrested and held as collateral" or be available if Defendants fail to post bond, and for Defendants to haul out and repair Plaintiffs' boat.[7] Id. at 3.

Since March 2013, the parties have filed several, sometimes duplicitous, motions for the Court's resolution. Before the Court are Plaintiffs' Motion for Summary Judgment, Dkt. No. 16, Defendants' Motions to Dismiss, Dkt. Nos. 32, 34, Defendants' Motion to Strike and Motion for Judicial Review, Dkt. No. 38, Plaintiffs' Motions for a Hearing Regarding Summary Judgment,

---

[7] On June 22, 2013, Plaintiffs filed an "Addendum to the Damages to Sunny." Dkt. No. 55, at 1. The addendum described a chain of events since a hearing before the Magistrate Judge on July 11, 2013. See id. at 1-4. In conclusion, the addendum asks the Court to issue a restraining order against anyone except Plaintiffs and their licensees from accessing the boat and to order Wallace to pay for towing, storing, and repairing the boat, and the cost of allegedly stolen items. Id. at 4.

AO 72A
(Rev. 8/82)

Dkt. Nos. 63, 71, Plaintiffs' Renewed Motion for Summary Judgment, Dkt. No. 75, and Defendants' Motion to Reconsider, Dkt. No. 81. On March 24, 2014, a hearing was held to clarify events and address Defendants' motion to dismiss. Dkt. No. 98.

## III. Discussion

### A. Dismissal for Lack of Jurisdiction

Defendants argue that the Court lacks jurisdiction over the action and therefore should dismiss the case. See Dkt. No. 34, at 3-4, 16. Specifically, Defendants attack Plaintiffs' only pleaded basis for jurisdiction—admiralty in rem—as improper because "Plaintiffs appear to be attempting to use the reverse of an admiralty in rem action to arrest assets on land for alleged damage to their vessel." Id. at 3. Defendants are correct. Plaintiffs' sole basis for subject matter jurisdiction is improper.

#### 1. Basis for Defendants' Motion

Defendants do not clearly specify under what procedural rule their motion is brought, or whether the attack is against personal or subject matter jurisdiction. See id. (arguing that the Court lacks jurisdiction, without specifying in what form). Although they cite 28 U.S.C. § 1333, the subject matter jurisdiction statute for cases in admiralty, the remainder of Defendants' discussion focuses on whether the action is one properly brought in rem—typically an issue of personal

7

jurisdiction. See id. at 3-4. Despite this, in the context of Defendants' motion, the issue goes to subject matter jurisdiction.

2. Legal Standard for Subject Matter Jurisdiction

Federal courts have limited subject matter jurisdiction. Ishler v. Internal Revenue, 237 F. App'x 394, 395 (11th Cir. 2007) (per curiam) (citing Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). The plaintiff bears the burden of establishing the court's subject matter jurisdiction. Id.

Under Rule 12(b)(1), there are two types of motions to dismiss for lack of subject matter jurisdiction: facial attacks and factual attacks. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam)). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. The complaint may be dismissed on a facial attack only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1536 n.5 (11th Cir. 1994) (citation omitted). "Factual attacks challenge subject matter

AO 72A
(Rev. 8/82)

jurisdiction in fact, irrespective of the pleadings."[8] Morrison, 323 F.3d at 924 n.5.

### 3. Jurisdiction Based on Admiralty in Rem

#### a. Legal Standard

An admiralty action in rem must have a proper substantive basis, as stipulated by Supplemental Rule C of the Federal Rules of Civil Procedure ("Rule C"): it may be brought to enforce a maritime lien or "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." Rule C(1).

"[W]hether maritime jurisdiction exists is a question anterior to, although often coincident with, the question of whether the plaintiff has a maritime lien."[9] Wilkins v. Commercial Inv. Trust Corp., 153 F.3d 1273, 1276 (11th Cir. 1998) (per curiam). "A maritime lien is 'a special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises.'" In re Container Applications Int'l, Inc., 233 F.3d 1361, 1362 n.1 (11th Cir. 2000) (brackets omitted) (quoting Galehead, Inc. v. M/V Anglia, 183 F.3d 1242, 1247 (11th Cir. 1999) (per curiam)). Maritime liens typically attach only to vessels. See Admiral

---

[8] Rather than form their attack as factual, Defendants challenge whether the alleged facts provide a basis for jurisdiction.

[9] Essentially, this makes in rem jurisdiction available to "only those who claim ownership or possession." See 12 Charles Alan Wright et al., Federal Practice and Procedure § 3223 (2d ed. 2013).

9

Cruise Servs., Inc. v. M/B St. Tropez, 524 F. Supp. 2d 1378, 1380 (S.D. Fla. 2007); Crimson Yachts v. Betty Lyn II Motor Yacht, 603 F.3d 864, 872 (11th Cir. 2010); 46 U.S.C. § 31342(a)(1). A vessel "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Crimson Yachts, 603 F.3d at 872 (quoting 1 U.S.C. § 3); see also Lozman v. City of Riviera Beach, 133 S. Ct. 735, 741 (2013) (criticizing the Eleventh Circuit's standard for determining whether a structure is a "vessel" by clarifying that "a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water").

b. Application

The property that Plaintiffs attempt to use for providing in rem jurisdiction[10] consists of "the Durant family property

---

[10] Had Plaintiffs pleaded admiralty in personam jurisdiction in the alternative, they may have alleviated the defect in bringing the case in rem. See United States v. One Lear Jet Aircraft, Serial No. 35A-280, Registration No. YN-BVO, 836 F.2d 1571, 1575 (11th Cir. 1988). Yet, they did not. Instead, they asserted a disarrayed set of facts, supported by a consistent assertion that in rem jurisdiction underlay the action.

Under impression that Plaintiffs sought exclusively an in rem action, the Court asked at the motions hearing for Plaintiffs to confirm. The Court asked, "As far as between in rem and in personam, are you seeking in rem or in personam?" Plaintiffs responded, "In rem." Their response is consistent with their Complaint and Amendment Complaint, which carefully confirm the in

AO 72A
(Rev. 8/82)

where Ocean Bounty Seafood and Ocean Bounty Marine Railway are situated," or (as stated in the Complaint's caption) "Ocean Bounty Marine Railway, Ocean Bounty Seafood, [and] William Wallace's assets and the property [that Defendants' structures are] built on owned by the Durant family." Dkt. No. 6, at 1, 4. This cannot support an admiralty action in rem because no claim is made against a vessel, the only res to which a maritime lien could attach. Although the underlying property could be interpreted to constitute any vessels owned by Defendants, the Complaint does not allege this with meaningful detail, as required by Rule C. See Rule C(2)(b) (requiring that a complaint for an in rem action "describe with reasonable particularity the property that is the subject of the action"); Fathom Exploration, LLC v. Unidentified Shipwrecked Vessel or Vessels, 352 F. Supp. 2d 1218, 1222 (S.D. Ala. 2005) (quoting First Circuit caselaw to give meaning to Rule C's particularity requirement as requiring "a meaningful level of detail in describing the property" at issue). Indeed, the only specific assertion is against the real property on which the Defendant-businesses sit. See Dkt. No. 6, at 1, 4. Because the res is

---

rem nature. Plaintiffs are pro se and deserve leeway, but the Court is not permitted to completely redraft and reform the jurisdictional basis.

improper, subject matter jurisdiction is not established as existing through admiralty in rem.[11]

### 4. Diversity as an Alternative Basis for Jurisdiction

During and after the hearing, Plaintiffs claimed that they properly invoked diversity jurisdiction. Yet, nowhere does the Complaint, as originally filed or amended, plead diversity jurisdiction or provide any facts that could support a speculation of diversity. See Dkt. Nos. 1; 6. Instead, throughout their pleadings, Plaintiffs have identified only admiralty in rem as providing jurisdiction. See, e.g., Dkt. Nos. 1, at 1 (labeling the Complaint as an "IN REM ACTION" (capitalization in original)); 6, at 1 (same); 6, at 4 (requesting an arrest of "the Durant family property where Ocean Bounty Seafood and Ocean Bounty Marine Railway are situated," to be held as collateral).

Plaintiffs' attempts to point to instances in which they invoked diversity jurisdiction are without merit. For example, Plaintiffs stated at the motions hearing that the civil cover sheet specifies that the case is brought in diversity, although the cover sheet clearly says otherwise. Dkt. No. 1-1. Further, after the motions hearing, Plaintiffs filed a "Notice of Diversity of Citizenship." Dkt. No. 101. This filing argues

---

[11] The Court also notes that there has been no attachment of the res at issue. Before finding in rem liability, there must be attachment subjecting the res to the Court's jurisdiction. Dow Chem. Co. v. Barge UM-23B, 424 F.2d 307, 311 (5th Cir. 1970).

that diversity of citizenship was cited on page two of the Amended Complaint and that the Court can consider allegations in a different case. Id.

Plaintiffs' first argument in their Notice of Diversity of Citizenship is without merit. Apparently, they refer to the portion of the Amended Complaint that states that Plaintiffs' vessel was towed from Florida to Georgia. Dkt. No. 6, at 2. The Court does not construe this, as Plaintiffs suggest, as "cit[ing] diversity of citizenship," but instead as stating a factual detail in the course of the Complaint's narrative. Dkt. No. 101. Pursuant to Rule 8(a)(1), a pleading that states a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction." In doing so, the pleading cannot merely conclude that the claim is within diversity jurisdiction, but instead "must allege the citizenship of the parties and the amount in controversy." Hammes v. AAMCO Transmissions, Inc., 33 F.3d 774, 778 (11th Cir. 1994). The Complaint fails to plead anything that can be read as invoking diversity jurisdiction, and the Court declines to rely on a single fragmentary allegation of how a boat got from one state to another. See De Volld v. Bailar, 568 F.2d 1162, 1165 (5th Cir. 1978) (affirming a lower court that did not rely on fragmentary allegations to invoke jurisdiction over the claim); Mass v. McDonald's Corp., No. Civ.A.3:04-CV-0483-M, 2004 WL

13

2624255, at *2 (N.D. Tex. Nov. 12, 2004) (dismissing a pro se plaintiff's complaint for lack of subject matter jurisdiction for not identifying the jurisdictional grounds for his claims).

Despite the liberal construction afforded to pro se pleadings, a court is "not required to 'rewrite an otherwise deficient pleading in order to sustain an action.'" Rock v. BAE Sys., Inc., No. 13-13196, 2014 WL 715606, at *1 (11th Cir. Feb. 26, 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)). The Court declines to do so here.

Plaintiffs' second argument in their Notice of Diversity of Citizenship is also without merit. The Court is aware of no authority in which it may consider the content of a separate action's pleadings to invoke jurisdiction. Therefore, diversity jurisdiction does not serve as a proper alternative basis for subject matter jurisdiction.[12]

---

[12] Even if the Court was able to find that diversity jurisdiction was properly pleaded, there would be other deficiencies fatal to Plaintiffs' case, including deficient service and improperly identifying the defendants. Although Wallace and the Ocean Bounty entities admitted to receiving a copy of the complaint and summons through certified mail, there is no evidence that service was properly made pursuant to Rule 4. Further, rather than name defendants with legal personhood, the Complaint is brought against the assets of certain persons, not the persons themselves.

B. Other Motions

Because the Court lacks subject matter jurisdiction to hear the case, all other pending motions are **MOOT**. Dkt. Nos. 16; 32; 38; 63; 71; 75; 81.

**IV. Conclusion**

For the aforementioned reasons, Defendants' Motion to Dismiss is **GRANTED**. Dkt. No. 34. All other pending motions are **MOOT**. Dkt. Nos. 16; 32; 38; 63; 71; 75; 81. The Clerk of Court is instructed to close the case.

**SO ORDERED**, this 27TH day of March, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)